## Cadillac Oil & Gas Company v. Leonard, et al.

(Decided May 9, 1924.)

## Appeal from Allen Circuit Court.

1. Mines and Minerals—Purchasers of Part of Land Bound by Oil Lease.—Purchasers of part of tract of land were bound by oil lease on whole tract; lease being on record.
2. Mines and Minerals—Finding that Lease Had Expired Warranted. —In action by lessee in oil lease against lessees in subsequent leases, finding by chancellor that term of plaintiff's lease had expired without production of oil or gas in paying quantities necessary to keep it in force held in accord with weight of evidence.

HARPER & DENTON for appellant.

OLIVER & DIXON and THURMAN B. DIXON for appellees.

OPINION OF THE COURT BY TURNER, COMMISSIONER— Affirming.

On the 31st of October, 1917, R. L. Sears, Leslie Gillock and Hubert Gillock executed an oil and gas lease to Wright and Kuykendall on about 1,000 acres of land owned by the grantors.

That lease was made to second parties and their successors and assigns,

"for 18 months from the date hereof and as long thereafter as oil or gas is produced from said premises in paying quantities."

Thereafter in March, 1918, the grantors sold from a tract of 108 acres embraced in the 1,000 acres, known as the Patton tract, 17 acres to two or three colored persons named Stark; and this 17 acres is the subject of this controversy.

Of course the purchasers were bound by the provisions of the lease on the 1,000 acres which embraced the land they bought, for the lease was then on the record.

In November, 1920, the Stark people made two or three leases to Leonard, trustee, and others, upon separate parts of their 17 acres, under the belief and advice that the original lease upon the 1,000 acres had expired by its terms.

After Leonard had brought in a good producing well on the 17 acres early in the spring of 1921 the Cadillac Oil & Gas Company instituted these equitable actions against the Stark people and their lessees in the leases

of November, 1920, and asserted title under the original lease which the company then owned, executed by Sears and others in October, 1917, which embraced the 17 acres. The company sought a judgment quieting its title.

The defendants answered asserting in substance that the original lease, under which the plaintiff claimed, had by its terms expired before the execution of their leases in November, 1920, and asked that their titles be also quieted.

After the two suits were prepared and consolidated the chancellor entered a judgment dismissing the plaintiff's petition and quieting the titles of the several defendants and their lessees.

The controlling question in the case is purely one of fact, and that is whether at the expiration of 18 months from the date of the original lease oil or gas had been produced from the premises in paying quantities.

The testimony of the witnesses on this subject is somewhat conflicting, but on the whole the preponderance of it appears to support the judgment of the chancellor. Independent, however, of the testimony itself, there are some potent circumstances supporting the contention of the appellees that there was no such production at the expiration of that period.

For instance, it appears that in the fall of 1919, long after the Starks people had become the purchasers of the 17 acres, Sears for a consideration extended the lease as to the balance of the land, but did not undertake to embrace therein that portion of the land which he had sold, and within which the 17-acre tract is embraced. This was done at the instance of the persons then claiming under the original lease, and it is difficult to understand how if their original lease was then in effect they would have paid a large sum of money in the fall of 1919 to get an extension of a lease that was already in existence.

It likewise appears that at about the time of this extension some parties undertook to get a similar extension from the Starks people who were then the owners of the 17 acres, and they expressly declined to grant such extension.

Not only so, it appears that a pipe line was only about a quarter of a mile from this tract of land where appellant now claims it had oil in paying quantities, but it is admitted that they were never at any time able to induce the pipe line company to extend its line so as to take the production from this 1,000 acres, until Leonard

had produced a good well in the spring of 1921 on the 17 acres, and there had been another good well brought in on an adjoining tract; and the pipe line was then for the first time extended to this territory.

We think the chancellor's judgment is in accord with the weight of the evidence, and the same is therefore affirmed.